IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 24-cr-00251-RMR-04

UNITED STATES OF AMERICA,

     Plaintiff,

v.

4.    ADAM SHORR,

     Defendant.

---

## GOVERNMENT'S MOTION FOR INQUIRY REGARDING MULTIPLE REPRESENTATION

---

The United States of America respectfully moves this Court to inquire about the propriety of multiple representation pertaining to attorney Steven Sadow's representation of Defendant Adam Shorr in this case and his representation of Defendant Thomas Dougherty in Southern District of Florida case number 9:22-cr-80022-AMC. To ensure Defendant Shorr's Sixth Amendment right to counsel, to prevent any potential future motion for substitution of counsel in this case and associated inefficiencies, and to avoid any appellate and post-conviction motions, the United States respectfully requests that the Court hold a hearing, make findings, and issue an order as to (1) whether there is a conflict of interest or potential conflict of interest in Mr. Sadow's representation of both defendants, (2) whether any conflict requires disqualification or is waivable, and (3) if waivable, to obtain a knowing and voluntary waiver and to direct any appropriate and approved procedures for defense counsel to handle the multiple representation.

1

<u>Procedural and Factual Background</u>

1.      On August 21, 2024, Defendant Adam Shorr was charged by the Indictment in this case with violations of Title 18, United States Code, Section 1349, conspiracy to commit wire fraud and health care fraud (Count 1), and Title 18, United States Code, Section 371, conspiracy to offer and pay kickbacks and bribes (Count 2).  As charged, the conspiracies pertain to Defendant Shorr's participation in a genetic testing fraud scheme that was run through the business Tesis Biosciences, LLC ("Tesis"), which owned and operated multiple genetic testing labs, including Claro Scientific Laboratories, Inc. ("Claro"). Defendant Shorr was a founder and beneficial owner of Tesis and was a "business consultant" for Tesis. The Indictment charges Defendant Shorr with, inter alia, participating in running Claro, negotiating kickback relationships with marketers for Claro, and causing the submission of false and fraudulent claims to Medicare and Colorado Medicaid for medically unnecessary genetic tests, including through the Claro laboratory.

2.      The evidence in this case indicates that Defendant Shorr was the primary point of contact for one of the first "marketing" groups to agree to make referrals to the Tesis co-defendants in exchange for kickbacks, Broad Street Lifestyles, run by Defendant Dougherty and others in Florida. Initially, Broad Street Lifestyles worked with Defendant Shorr and his co-defendants through their company Autumn Partnership, which was a "proof of concept" for the Tesis/Claro fraudulent business model. *See* Indictment, ECF No. 1, at ¶¶ 28, 36, 59. When Defendant Shorr and his co-defendants acquired the Claro laboratory, a spin-off of Broad Street Lifestyles, Sunrise Consulting, LLC, in which Defendant Dougherty participated, was one of the first marketers to agree to sell genetic testing referrals to Claro in exchange for kickbacks.

3.     On August 23, 2024, Mr. Sadow filed an entry of appearance on behalf of Defendant Shorr in this case. ECF No. 13. On September 3, 2024, Defendant Shorr made his initial appearance with counsel in this case. ECF No. 35.

4.     Mr. Sadow also represents Defendant Thomas Dougherty in case number 9:22-cr-80022-AMC in the Southern District of Florida. On February 25, 2022, Defendant Dougherty was charged by indictment with, inter alia, conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349 (Count 1), conspiracy to pay and receive health care kickbacks in violation of 18 U.S.C. § 371 (Count 7), and receipt of kickbacks in violation of 42 U.S.C. 1320a-7b(b)(1)(A) (Count 10). *See* Exhibit 1 (9:22-cr-80022-AMC, Indictment, ECF No. 23). Defendant Dougherty was a beneficial owner of Broad Street Lifestyles, *id.* at p. 10, ¶ 40, the marketing company that worked with Autumn Partnership and Claro. The relationship between Defendant Dougherty, his related marketing groups, and Defendant Shorr and his co-defendants is subsumed within the charges in both the Southern District of Florida Indictment and the Indictment in this case.

5.     As alleged in Count 1 of the Southern District of Florida Indictment and as pertinent here, Defendant Dougherty was charged with: agreeing to refer Medicare beneficiaries and doctors' orders for genetic testing to laboratories in exchange for kickbacks and bribes, based on the volume or value of payments by Medicare to the laboratories, and regardless of whether the genetic testing was medically necessary, *id.* at p. 14, ¶ 4; negotiating kickback and bribe arrangements with laboratories and disguising the nature and source of these kickbacks and bribes by concealing such payments through sham contracts and otherwise making such

payments look like they were for legitimate services, *id.* at p. 14, ¶ 5; offering and paying bribes to telemedicine companies in exchange for ordering and arranging for the ordering of genetic testing for Medicare beneficiaries, *id.* at p. 14, ¶ 6; forging and back dating doctors' orders for genetic testing, *id.* at p. 15, ¶ 7; causing the submission of false and fraudulent claims to Medicare for genetic testing, *id.* at p. 15, ¶ 8; and receiving kickbacks and bribes from independent clinical laboratories enrolled with Medicare, including "Laboratory 1," in exchange for referring Medicare beneficiaries and doctors' orders for genetic testing. "Laboratory 1" is Claro.

6.    The Southern District of Florida Indictment charged Defendant Dougherty in Count 7 with conspiring with his indicted co-conspirators, and others known and unknown to the grand jury, to violate the Anti-Kickback Statute. It was the purpose of the conspiracy, as charged and as relevant here, to solicit and receive kickbacks and bribes in exchange for the referral of Medicare beneficiaries and doctors' orders for genetic testing to laboratories, submitting and causing the submission of claims to Medicare through laboratories for genetic testing, and concealing and causing the concealment of kickbacks. *Id.* at p. 22, ¶ 3. The manner and means of the conspiracy included negotiating kickback and bribe arrangements with Laboratory 1— Claro— and concealing such kickbacks and bribes by describing them as payments for legitimate services. *Id.* at p. 23, ¶ 5. One overt act alleged in the Indictment is the April 30, 2021, transfer from "Company B" to a "Company A" account, alleged to constitute a kickback payment for Medicare beneficiary referrals. *Id.* at p. 24, ¶ 8. This same payment alleged in the overt act is the basis for the charge against Defendant Dougherty and others in Count 10 for soliciting and

4

receiving an illegal kickback. *Id.* at p. 26, ¶ 2. Company B is Claro Point LLC, a company that held a bank account for the Claro laboratory from which payments to marketers were made in this case. Company A was Sunrise Consulting LLC ("Sunrise"), a marketing company that was essentially a sub-entity of Broad Street Lifestyles. Defendant Dougherty and his co-defendant Daniel Carver both received a percentage of all payments from Claro to Sunrise for the referrals and doctors' orders Sunrise sent and for which Claro received payment from Medicare. The evidence in this case indicates that Claro paid approximately $1.5 million in kickbacks and bribes to Sunrise for referrals that originated in the Broad Street Lifestyles call center in Florida.

7.        On February 2, 2022, the day the original indictment charging Defendant Dougherty was filed in the Southern District of Florida, Mr. Sadow filed an entry of appearance for Defendant Dougherty. (9:22-cr-80022-AMC, ECF No. 40).

8.        A Superseding Indictment was filed in the Southern District of Florida on May 30, 2023, charging Defendant Dougherty with the same offenses. *See* Exhibit 2 (9:22-cr-80022-AMC, Superseding Indictment, ECF No. 577).

9.        Defendant Dougherty pleaded guilty to Count 1 of the Superseding Indictment, charging him with a conspiracy to commit wire fraud and health care fraud in violation of Title 18, United States Code, Section 1349. *See* Exhibit 3 (9:22-cr-80022-AMC, Plea Agreement, ECF No. 825). The Plea Agreement requires Defendant Dougherty's cooperation with the Department of Justice. *Id.* at pp. 5–7, ¶¶ 5, 11. Mr. Sadow signed the Plea Agreement as counsel for Defendant Dougherty. *Id.* at p. 15.

10.        The Agreed Factual Basis for Guilty Plea filed in the Southern District of Florida

5

provides that Defendant Dougherty engaged in a conspiracy to commit health care fraud and wire fraud including by conducting deceptive telemarketing campaigns targeting Medicare beneficiaries in an effort to obtain their consent for genetic testing and sold doctors' orders for genetic testing to laboratories in exchange for kickbacks. *See* Exhibit 4 (9:22-cr-80022-AMC, Agreed Factual Basis for Guilty Plea, ECF No. 824). Mr. Sadow signed the Factual Basis filing as counsel for Defendant Dougherty. *Id.* at p. 5.

11.    Defendant Dougherty was sentenced on January 24, 2024, to 168 months of imprisonment. *See* Exhibit 5 (9:22-cr-80022-AMC, Judgment, ECF No. 982). He is currently serving his sentence in the custody of the Bureau of Prisons. Cooperation in the prosecution of his associates could lead to a motion by government counsel in the Southern District of Florida for reduction in sentence pursuant to Federal Rule of Criminal Procedure 35. *See* Exhibit 3 (Plea Agreement) at pp. 6–7, ¶ 11. At this time, the United States anticipates that Defendant Dougherty will be called to testify at trial against Defendant Shorr and his co-defendants.[1] His cooperation, including any pretrial interviews, preparation for testimony, and any related filings and argument for post-sentencing reduction of sentence under Rule 35 would be handled by Defendant Dougherty's counsel.

12.    The Government has conferred with Mr. Sadow, who informed the Government that he continues to represent Defendant Dougherty and intends to maintain his representation of Defendant Shorr. Mr. Sadow stated that he does not oppose the narrow issue of a request for a

---

[1] The Government wishes to interview Defendant Dougherty directly about his relationship with the defendants in this case, including Defendant Shorr, but has not attempted the interview to date due to the potential conflict of interest.

hearing, but he takes the position that there is no conflict, that any potential conflict is waivable, and should his clients waive the conflict, he proposes certain procedures for the Government's interview of and interactions with Defendant Dougherty and cross-examination of Defendant Dougherty during any testimony in this case against Defendant Shorr and his co-defendants.

<u>Attorney Conflict of Interest</u>

13.    Defendants in criminal cases are guaranteed the right to counsel, including "the right to representation that is free from conflicts of interest." *United States v. Williamson*, 859 F.3d 843, 851 (10th Cir. 2017) (internal quotation marks omitted).  Additionally, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988).

14.    "A conflict of interest is 'a division of loyalties that affect[s] counsel's performance.'" *Id.* (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002)). This sixth amendment right to conflict-free representation "is not limited to cases involving joint representation of codefendants at a single trial, but extends to any situation in which a defendant's counsel owes conflicting duties to that defendant and some other third person." *United States v. Soto Hernandez*, 849 F.2d 1325, 1328 (10th Cir. 1988) (citing *Wood v. Georgia*, 450 U.S. 261, 268–72 (1981); *United States v. Winkle*, 722 F.2d 605, 609–10 (10th Cir.1983)).

15.    The government has "a duty to alert the court to defense counsel's potential and actual conflicts of interest." *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (citing *United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012) (emphasis omitted). The

prosecution's duty to disclose defense counsel's potential or actual conflicts of interest facilitates the administration of justice by helping to avoid lengthy delays or retrials that could occur when conflicts render defense counsel's representation ineffective. *McKeighan*, 685 F.3d at 967.

16.     Thus, to "ensure that a criminal defendant's right to conflict-free counsel is not abridged, an initial inquiry is required when the trial court knows or reasonably should know that a particular conflict exists," *United States v. Blount*, 291 F.3d 201 (2d Cir. 2002) (internal citations omitted). The first step in the court's inquiry is to "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153 (2nd Cir. 1994). If the Court finds a conflict or potential conflict, the Court has a "disqualification/waiver obligation." *Id.* That is, "[i]f the court discovers that the attorney suffers from a severe conflict— such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation—the court is obliged to disqualify the attorney." *Id.* If the court finds a "lesser or only a potential conflict—such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation," the court should obtain the defendant's valid waiver of his right to a non-conflicted lawyer. *Id.* at 153. *Cf.* Fed. R. Crim. P. 44(c)(2) (where there is joint representation by a single attorney for two defendants in the same case, providing that the court "must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation" and "must take appropriate measures to protect each defendant's right to counsel").

8

A.    <u>**The Conflict-of-Interest Inquiry**</u>

17.    A conflict can arise from multiple representation where the same attorney represents two defendants in separate proceedings. *Williamson*, 859 F.3d at 852, n.2 (explaining the difference between joint representation, where a single attorney represents two defendants in the same proceeding, and multiple representation, referring to simultaneous representation in separate proceedings). The Tenth Circuit has concluded that "an actual conflict would arise where defense counsel is unable to cross-examine a Government witness effectively because the attorney also represented the witness." *Winkle*, 722 F.2d at 610.[2] Additionally, an actual conflict exists even prior to the need for cross-examination where an attorney has a duty to his clients not to divulge confidences and interests that could necessarily be used against the client, even unintentionally, in the representation of the other defendant client. *See, e.g.*, *Perillo v. Johnson*, 205 F.3d 775, 798 (5th Cir. 2000) ("A conflict of interest may exist by virtue of the fact that an attorney has confidential information that is helpful to one client but harmful to another."); *cf. United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995) ("[A] defendant has a right to an attorney who can make strategic and tactical choices free from any conflict of interest. An attorney who is prevented from pursuing a strategy or tactic because of the canons of ethics is hardly an objective judge of whether that strategy or tactic is sound trial practice. Counsel's inability to make such a conflict-free decision is itself a lapse in representation."). Indeed, a conflict occurs when the defendants' interests "diverge with respect to a material factual or legal

---

[2] *Winkle* involved a case of successive representation, in which counsel's representation of the witness testifying against his defendant client had ended before counsel's representation of the defendant on trial began. 722 F.2d at 610. The conflict is even clearer here, where counsel is actively representing both Defendant Dougherty and Defendant Shorr at the same time.

issue or to a course of action[;]" *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980); "when counsel cannot use his best efforts to exonerate one defendant for fear of implicating the other," *United States v. Kaufman*, 354 F. Supp. 2d 1201, 1204 (D. Kan. 2005) (citing *Dokes v. Lockhart*, 992 F.2d 833, 836 (8th Cir. 1993) (internal citations and punctuation omitted); and "whenever one defendant stands to gain significantly by advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *Kaufman*, 354 F. Supp. 2d at 1204 (citing *United States v. McCaskey*, 9 F.3d 368, 381 (5th Cir. 1993)).

18.    Here, counsel would actively represent the witness, Defendant Dougherty, and his indicted client, Defendant Shorr, at the same time. The representation will necessarily encompass all phases of Defendant Dougherty's ongoing obligation to cooperate and to testify at trial if called, and counsel's duty to advocate to obtain a post-conviction reduction in sentence under Rule 35. At the same time, counsel's representation will include all phases of post-indictment representation for Defendant Shorr, defining a defense strategy based on counsel's understanding of the witnesses and evidence, pretrial litigation, trial, and negotiation of any potential pretrial resolution. Divided loyalty is inherent and unavoidable in this scenario, even before the moment of Defendant Dougherty's anticipated testimony and cross-examination should arrive. *See, e.g.*, *United States v. Alvarez*, 580 F.2d 1251, 1258 (5th Cir. 1978) ("A lawyer's role encompasses much more than simply advising a prospective witness to tell the truth; he must take additional steps to prepare him to testify. It is during this preparatory stage that defense counsel is torn between serving the witness' best interests in fully cooperating with the government in supplying credible testimony and the accused's obvious desire to discredit the witness' testimony. The

Constitution does not countenance such divided loyalties."); Colorado Rule of Professional Conduct 1.7, Comment 8 ("Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests."); D.C.COLO.LAttyR. 2 (adopting the Colorado Rules of Professional Conduct as the standards of professional responsibility for the Court).

19.    An actual conflict of interest arises "when counsel [is] forced to make choices advancing other interests to the detriment of his client." *Williamson*, 859 F.3d at 851 (internal quotation marks omitted). Based on the charges in the two cases, the facts admitted by Defendant Dougherty, and the evidence in this case, the Government respectfully submits that there is an actual conflict of interest in counsel's representation of both defendants.

**B.    <u>The Disqualification/Waiver Inquiry</u>**

20.    If the Court determines that there is an actual or potential conflict, it moves to the second step, which requires consideration of whether the conflict is automatically disqualifying or waivable. *Levy*, 25 F.3d at 153.

21.    As an initial matter, it is plain that the Court's rules of professional responsibility prohibit an attorney from representing a client when "the representation involves a concurrent conflict of interest," which includes those representations where "there is a significant risk that the representation of one of more clients will be materially limited by the lawyer's responsibilities to another client," unless "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client [. . .] and each

11

affected client gives informed consent, confirmed in writing." Colorado Rule of Professional Conduct 1.7; D.C.COLO.LAttyR. 2 (adopting the Colorado Rules of Professional Conduct as the Court's standards of professional responsibility). To avoid disqualification, therefore, at minimum, both Defendants Shorr and Dougherty must provide informed consent to the conflict. Such consent, however, does not end the constitutional inquiry.

22.    "Federal Courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160. When a district court finds that counsel has a conflict of interest, real or potential, it retains "substantial latitude" to disqualify counsel, even where a defendant consents to representation. *Id.* at 163. The district court may refuse a waiver "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. Because of the importance of a defendant's interest in representation by counsel of his or her choice, the evaluation of whether to allow counsel with a potential conflict of interest to proceed "must be left primarily to the informed judgment of the trial court," and the court's decision will be reviewed only for abuse of discretion. *Id.*

23.    The line between conflicts that require disqualification and those that are waivable "is a boundary that is not demarcated by barbed wire"; there is "no bright line separating circumstances that are waivable from those that are not." *United States v. Vertuccio*, No. 15-CR-174 (ENV), 2017 WL 6513676, at *4 (E.D.N.Y. Dec. 19, 2017). To be sure, courts

generally have recognized a limited set of cases in which attorney conflicts are held to be unwaivable. As one district court summarized, these have included: "(1) when the subject attorney faces or potentially faces criminal liability arising out of the same criminal conduct as the defendant seeking his services, and (2) when the subject attorney's financial interests diverge from those of the defendant." *Id.* at *2. But courts also disqualify counsel whose clients' positions are irreconcilably opposed. The same district court that identified these broad categories disqualified counsel where counsel represented two co-conspirators, one who had already pleaded guilty to the conspiracy alleged against himself and the jointly represented co-conspirator, and one who planned to go to trial proclaiming his innocence of being a co-conspirator. The court found an inherent and unwaivable conflict because the attorney would be "gathering facts and confidences from both defendants that, based on his tactical decisions, whether [the attorney] elects to use or refrain from using certain information, can come back to haunt either or both of his clients." *Id.* at *3. This situation was problematic "not merely because [the attorney] represents codefendants named in the same conspiracy but because he represents one defendant who acknowledges the existence of the conspiracy and his guilty involvement in it and the other who effectively denies that there was a conspiracy at all. It is a matter of joint representation, but hardly one of joint defense." *Id.*

24.     The same scenario presents itself in this case. Although Defendant Dougherty is charged in a different case in a different district from Defendant Shorr, they are co-conspirators, one of whom has accepted responsibility and stands guilty with the concurrence of his counsel, the other who has pleaded not guilty and will be represented by the same counsel. This raises

serious Sixth Amendment concerns. On the other hand, in conducting the disqualification analysis, the district court also "must recognize a presumption in favor of [the defendant's] counsel of choice." *Wheat*, 486 U.S. at 164. Indeed, the courts recognize that "attorneys are not fungible; often the most important decision a defendant makes in shaping his defense is his selection of an attorney." *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990) (internal citations and punctuation marks omitted), *superseded by statute on other grounds as recognized by Lewis v. Comm'r of Int. Rev.*, 523 F.3d 1272 (10th Cir. 2008). The Government therefore raises this concern for the Court's consideration and inquiry, deferring to the significant discretion the Court holds in reaching a conclusion on the question of disqualification or waiver. *See United States v. Evanson*, 584 F.3d 904, 911 (10th Cir. 2009) (noting the "evaluation of the facts and circumstances of each case . . . must be left primarily to the informed judgment of the trial court," which is granted "broad latitude" in its disqualification decisions).

25.    If the Court concludes that the conflict does not require disqualification, the Court may determine whether the defendant waives the right to conflict-free counsel. A defendant may knowingly and intelligently waive that right. *United States v. Hunt*, 62 F. App'x 272, 275 (10th Cir. 2003) (citing *Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5 (1978)). "In order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel." *United States v. Schneider*, 704 F.3d at 1292 (citing *United States v. Migliaccio*, 34 F.3d 1517, 1527 (10th Cir.

14

1994)).  Further, the "district court should also determine whether the defendant understands the facts underlying the conflict and the dangers and risks associated with waiving the conflict." *Hunt*, 62 F. App'x, at 276.

For the reasons stated above, the Government respectfully requests that the Court inquire into the propriety of counsel's representation of both Defendants Shorr and Dougherty.

Respectfully submitted this 11th day of September, 2024.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By:    */s/ Anna Edgar*
Anna Edgar
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
E-mail: anna.edgar@usdoj.gov
Attorney for the United States

15

### CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

_/s/ Amy McDaniel_____
Legal Assistant
U.S. Attorney's Office