IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:24-cr-00251-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

4. ADAM SHORR,

    Defendant.

### DEFENDANT SHORR'S RESPONSE TO MOTION FOR INQUIRY REGARDING MULTIPLE REPRERSENTATION

### INTRODUCTION

Counsel for Adam Shorr, Steven H. Sadow, agrees that a Rule 44(c) hearing would be appropriate to inquire into any possible conflict posed by Sadow's prior representation of Thomas Dougherty in a federal criminal case in Florida, coupled with the government's disclosure that Dougherty may be a witness in Shorr's trial.[1]

However, because Dougherty's case in the Southern District of Florida is over (he entered a plea and was sentenced and is now serving time in BOP custody), it is not accurate to describe the conflict as a "concurrent representation" conflict of

---

[1] It is important to note at the outset that the government's motion acknowledges that the Colorado prosecutor, AUSA Edgar, has not spoken to Dougherty yet. Therefore, the government is not in a position to say if it would actually use Dougherty as a witness.

1

interest. Though Sadow did not formally withdraw from the Florida case once sentence was imposed, there is nothing pending before that court. Although Dougherty has agreed to continue to cooperate post-sentencing, and apparently has already done so in cases other than the Colorado case, if that cooperation is deemed substantial by his DOJ prosecutors, the government will be obligated to file a Rule 35 motion to reduce Dougherty's sentence. In short, Sadow is not actively representing Dougherty.

**FACTS**

Dougherty was indicted in the Southern District of Florida on February 24, 2022. *United States v. Dougherty*, 9:22-cr-80022-DSL-2, Dkt. 23 (S.D.Fla 2022). Steve Sadow appeared pro hac vice to represent Dougherty on February 25, 2022 (Dkt. 40).

On September 19, 2023, Doughterty entered his guilty plea pursuant to a plea agreement (Dkt 823). Sadow handled the entry of the plea, as well as Daugherty's sentencing, which occurred on January 24, 2024 (Dkt. 973, 982). Dougherty was sentenced to a period of incarceration of 168 months (14 years) (Dkt. 973). He is currently in the custody of the BOP.

On January 26, 2024, PACER indicates that the case against Dougherty was "terminated." Except for a form motion and order for disbursement of bond, there have been no further pleadings or proceedings involving Dougherty since his sentencing on January 24.

Sadow has had limited contact with Dougherty since his sentencing. Dougherty did ask Sadow to notify his DOJ prosecutors in the Florida case that Dougherty may have information about indicted defendants in an unrelated federal case in Florida (**not Colorado**) and wished to talk with those federal prosecutors. In Sadow's communication with the federal prosecutor in that unrelated case, Sadow explained that he (Sadow) would not participate in any discussion between Dougherty and the other prosecutor (see Exhibit "1"). Sadow believes the other federal prosecutor pursued that lead but is not privy to what Dougherty might have said.

Sadow has not visited Dougherty in prison and has had very limited phone contact. Sadow did have have an email exchange with Dougherty on Corrlinks after the Colorado prosecutor raised the conflict issue. Sadow shared the Colorado prosecutor's email to Sadow and Sadow's response, and then asked Dougherty if he ever had any contact with Adam Shorr and if he would waive any possible conflict with Sadow representing Shorr. Dougherty responded that he had never talked to Shorr and he would waive any conflict. Moreover, during the course of Sadow's representation of Dougherty in Florida, Sadow does not believe he had any conversation with Dougherty about Shorr as Shorr was never identified as a potential government witness.

Sadow agrees not to advise or counsel Dougherty in connection with Dougherty appearing as a possible witness in this case. Independent counsel will

3

handle Dougherty's representation in connection with this case if Dougherty desires to be represented in his capacity as a witness. Further, Sadow will not participate in cross-examining Dougherty if called by the government as a witness and will not share privileged, secret or confidential information with the defense lawyer who handles the cross-examination.

Sadow has a long-standing relationship with Shorr, who Sadow represented in a federal criminal case in the Northern District of Georgia from 2007 to 2009. Sadow tried that case before a jury, which resulted in money laundering convictions on two counts. But the sentence imposed was only five (5) months incarceration and five (5) months home confinement as a condition of supervised release. Needless to say, Shorr was pleased with the outcome and trusts Sadow implicitly.

This is not a situation in which Shorr chose Sadow at random or upon someone else's recommendation, and this is not a case in which it would be inconsequential to Shorr who represents him in the Colorado case. He has praised Sadow's past performance publicly, and has remained in contact with Sadow for over 17 years. Shorr immediately contacted Sadow when Shorr and his wife received subpoenas from the Colorado prosecutor in 2022, and Sadow interacted on their behalf. Though *United States v. Gonzalez-Lopez*[2] cautions that in no case should a court view lawyers as fungible ("you've seen one, you've seen them all") that is

---

[2] 548 U.S. 140 (2006).

particularly true in this case where there has been a long-standing relationship between Sadow and Shorr. In accordance with *Gonzalez-Lopez*, if Sadow is improperly removed from Shorr's case, it would amount to structural error not subject to harmless error analysis and no showing of prejudice would be required.

## ARGUMENT

Defense counsel Sadow urges the Court to set this matter down for a hearing as requested by the government. At the hearing, the Court will learn about Shorr's history with Sadow. It will also learn that while Sadow may still be technically representing Dougherty because he never formally moved to withdraw from the S.D. Florida case (though the Florida case is designated as "terminated"), Sadow has not been actively representing Dougherty beyond notifying and confirming with unrelated federal prosecutors in Florida that Dougherty will speak to them. Significantly, Sadow will also inform the Court *ex parte in camera* Shorr's defense strategy to show that his representation of Shorr will not be impacted whatsoever by his representation of Dougherty,

This case does not involve true concurrent representation as argued by the government. Rather, the status of representation should be viewed as successive representation. Sadow previously represented Dougherty in one criminal case and now represents Shorr in a separate criminal prosecution (albeit with related criminal transactions).

5

Sadow will not be giving any legal advice to Dougherty in the Shorr case. Sadow will have no role in Dougherty's interview by the Colorado prosecutor. Dougherty will have independent counsel to advise him about signing any conflict waiver in this matter. And if the Colorado prosecutor actually decides to use Dougherty as a witness and Dougherty wants assistance of counsel in his capacity as a witness, he will have independent counsel assist his trial reparation.

The Colorado Rules of Professional Responsibility distinguish between cases of concurrent representation and cases involving successive representation. Compare Rule 1.7 (concurrent representation conflicts), and Rule 1.9 (successive representation conflicts).

Rule 1.7 provides:

> (a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> > (1)  the representation of one client will be directly adverse to another client; or
> > (2)  there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> > (1)  the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> > (2)  the representation is not prohibited by law;
> > (3)  the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> > (4)  each affected client gives informed consent, confirmed in writing.

Rule 1.9 applies when a lawyer represents a client that may in some way affect a former client:

(a)  A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
****
(c)  A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
  (1)  use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
  (2)  reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Sadow's representation of Shorr is permissible under *either* standard (*i.e.*, 1.7 or 1.9), but 1.9 is surely more applicable. Dougherty is a former client, Shorr is the current client, and the only questions are

(1) Whether anything that Sadow does in connection with Shorr's trial will negatively impact Dougherty; or

(2) If Sadow's representation of Shorr will in some material way be impaired because of his prior representation of Dougherty.

### 1. Dougherty Will Not Be Adversely Impacted By Sadow's Represenation of Shorr

Dougherty's case is over and thus there is no realistic way in which his prior case will be impacted by Sadow's representation of Shorr. The only open question

7

is whether his DOJ prosecutors in Florida will ask the court in Florida to reduce Dougherty's sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. The extent of Dougherty's cooperation in the Shorr case is entirely up to Dougherty and the Colorado prosecutor. Because Sadow will not participate in the cross-examination of Dougherty at the Shorr trial, Sadow will have no ability (or desire) to limit Dougherty's cooperation.

Sadow will not release any privileged communication he had with Dougherty either to the prosecution, to Dougherty's new counsel, to the attorney who will conduct the cross-examination of Dougherty at Shorr's trial (if any cross-examination is warranted).

Dougherty is fully aware of the current posture of his case and the limited impact that Sadow's representation to Shorr will have on Dougherty's case. He can be questioned at the Rule 44(c) hearing to confirm that he is aware of any potential conflict that may arise and is competent and willing to waive any conflict. Because he will have independent counsel advising him, there is little or no risk that his waiver will be anything other than knowing and voluntary.

**2. Sadow's Prior Representation of Dougherty Will Not Adversely Impact Shorr**

The only other issue is whether Sadow's prior represent of Dougherty will negatively impact his representation of Shorr. Surely not. Sadow will not be

8

impaired in his ability to cross-examine Dougherty, because he will not be the lawyer who will cross-examine Dougherty, should Dougherty be called as a witness..

Regardless of whether the Court invokes Rule 1.7 or 1.9, or both, Sadow anticipates that both Dougherty and Shorr will consent to Sadow's continued representation of Shorr and will waive any potential conflict of interest, after being fully advised by independent counsel.[3] A knowing and voluntary waiver is not an insignificant component of this Court's consideration of the potential conflict issue. *United States v. Hunt*, 62 Fed.Appx. 272, 274-75 (10th Cir. 2003), and the thorough questioning of the parties at the Rule 44(c) hearing will ensure the adequacy of the waiver. *Id.*; *United States v. Schneider*, 704 F.3d 1287, 1292 (10th Cir. 2013); *United States v. Bolivar*, 2012 WL 3150430 (D.N.M. 2012).

### 3. Shorr's Sixth Amendment Right to Counsel of Choice Far Outweighs any Negligible Potential Conflict that Could Prejudice Either Dougherty or Shorr

The different standard involved in concurrent versus successive representation is also recognized by the courts. The reason for the difference is obvious. In a case involving concurrent conflicts the potential for a conflict is apparent and will persist throughout trial as the lawyer endeavors to choose a defense, prepare witnesses, and conduct witness examinations and closing argument

---

[3] Sadow is also aware of his obligation to bring to this Court's attention any conflict that he becomes aware. *United States v. Penn*, 151 F.Supp.2d 1322 (D. Utah 2001); *Holloway v. Arkansas*, 435 U.S. 475, 485-486 (1978).

for two clients. The possibility of a conflict persists through sentencing, as well, because of the lawyer's conflicting responsibilities to the two defendants the lawyer concurrently represents.

In the case of successive representation, on the other hand, most of the problems are non-existent. The primary issue that needs to be addressed is counsel's awareness of his duty not to reveal any secrets or confidential information that he learned from his former client. *See United States v. Hunt*, 62 Fed.Appx. 272 (10th Cir. 2003); *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1884); *United States v. Davis*, 766 F.2d 1452 (10th Cir. 1985). Because Sadow does not believe he had any communications with Dougherty about Shorr (other than in the recent Corrlinks email exchange), there is simply no confidential communication or secret that Sadow is privy to that could be disclosed at the Shorr trial. Because Dougherty is only *anticipated* to be a government witness, as the Colorado prosecutor has not interviewed him yet, he will have his own independent counsel to protect his interests, including his confidential communications with Sadow. Thus, he will be protected to the fullest extent by both the prosecution and Dougherty's own independent lawyer (as well as Sadow's continuing obligation to report to the Court any perceived conflict that arises, *see* footnote 3, above). It will also be up to Dougherty and his new lawyer to decide whether to allow Sadow to interview him prior to trial, and up to Dougherty and his new lawyer whether Sadow should be told

about the content of any debriefing between Dougherty and the prosecution team. The prosecution team will deal with Dougherty's new lawyer, not with Sadow.

Finally, to ensure that there is no risk of any inadvertent disclosure of any confidential communication, Sadow will have separate counsel available to cross-examine Dougherty at the Colorado trial in the event Dougherty is actually called by the prosecution as a witness at trial and offers testimony about Shorr that invites cross-examination.

In *Wheat v. United States*, 486 U.S. 153 (1988), the Supreme Court held (5-4) that the district court has discretion to deny a defendant's request on the eve of trial to substitute counsel, specifically to engage a lawyer who already represented two other defendants in the same case (both of whom were awaiting sentencing – represented by the same lawyer – after having pled guilty). Thus, the lawyer would be concurrently representing three defendants in the same case (charged with being member of the same drug conspiracy). It was established in the lower court that at least one of the lawyer's other clients would be testifying against Mr. Wheat. The lawyer, in other words, would be compelled to cross-examine his own current client, without being able to rely on any information he learned from that client. The lower court, not surprisingly, found that the potential conflict was sure to blossom into an actual and irreconcilable conflict at trial. That conflict would result in Mr. Wheat

11

being denied the effective assistance of counsel.[4] And the risk to the other defendants, whose cases were still active was equally problematic.

In this case, no such inevitability exists. *First*: Shorr's Sixth Amendment right to effective assistance is not at risk. Sadow is not conflicted based on his prior representation of Dougherty, and his representation of Shorr faces no impediments based on his prior representation of Dougherty. *Second*: Dougherty faces no Sixth Amendment deprivation, because his case is over. Only Sadow's obligation as an attorney is relevant to Dougherty, who has the right to insist that his privileged communications remain privileged. Dougherty can enforce that right and will have his own lawyer to assist him in protecting that right. Also, Dougherty has agreed to waive any potential conflict, signalling the absence of any risk that his rights are in jeopardy.

*United States v. Turner*, 594 F.3d 946 (7th Cir. 2010), reveals the risk that exists if a court "errs on the side" of disqualifying a defendant's counsel of choice. The attorney who was prepared to represent the defendant at trial also was representing a co-conspirator who had already been tried and convicted, but who was awaiting sentencing. Both clients waived any potential conflict and neither defendant was actively cooperating. Nevertheless, the district court disqualified the

---

[4] The majority opinion relied on the language in Model Rule 1.7 in framing the Sixth Amendment analysis. *Id*. 160.

attorney from defendant's trial on the basis that one or the other defendant might decide to cooperate in the future. The *Turner* court held,

> Although the disqualification decision is "left primarily to the informed judgment of the trial court," *Wheat,* 486 U.S. at 164, 108 S.Ct. 1692, the force of the core constitutional command requires that the court start from a default position that gives effect to the defendant's Sixth Amendment right to choose his own counsel. The Supreme Court has therefore recognized a presumption in favor of the defendant's choice of counsel, and this presumption can be overcome only by an actual or serious potential for conflict.

*Id.*, at 951. *Turner* then set forth three factors that the court should consider in deciding whether there is a serious potential threat to the defendant's right to effective assistance of counsel:

> [B]efore disqualifying counsel based on a *potential* conflict, the district court should evaluate (1) the likelihood that the conflict will actually occur; (2) the severity of the threat to counsel's effectiveness; and (3) whether there are alternative measures available other than disqualification that would protect the defendant's right to effective counsel while respecting his choice of counsel.

Id, at 952. The likelihood that a conflict will actually occur in this case is minimal. Though the government has indicated it may call Dougherty as a witness, he has yet to be contacted or interviewed. The severity of the threat is non-existent because regardless of whether Dougherty is called, Sadow's effectiveness will not be curtailed in any way. The availability of independent counsel to conduct the cross-

examination of Dougherty (if any) eliminates even the remote chance of Sadow being ineffective, or Dougherty's rights being violated.[5]

The use of a separate attorney to conduct the cross-examination of Dougherty also differentiates this case from *United States v. Winkle*, 722 F.2d 605 (10th Cir. 1983), where the defense attorney was curtailed from cross-examining his former client about a subject that was arguably relevant at trial (though in *Winkle* the attorney was not just the lawyer for the witness in a prior case, he was also involved in a financial transaction that was the focus of his cross-examination of his former client – thus he was a witness).

## CONCLUSION

For the foregoing reasons, counsel for Adam Shorr agrees that a Rule 44(c) hearing is appropriate in this matter and that the Court, after hearing from Dougherty, Shorr, and Sadow, should permit Sadow to continue in his representation of Shorr in this case.

Respectfully submitted,

*/s/ Steven H. Sadow*
STEVEN H. SADOW
Attorney for Defendant Shorr
Georgia Bar No. 622075

---

[5] The use of a separate counsel to conduct the cross-examination has been approved in numerous cases, including *United States v. Turner*, 117 F.Supp.3d 988, (N.D.Ohio 2015) and *U.S. v. Georgievski,* 2015 WL 3378453, *2 (D.Nev.).

260 Peachtree Street, N.W.
Suite 2502
Atlanta, Georgia 30303
404-577-1400
stevesadow@gmail.com

## CERTIFICATE OF SERVICE AND COMPLIANCE

The undersigned attorney hereby certifies that the foreoing document was prepared using Times New Roman 14-point font and was filed with the Clerk using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

This 23rd day of September, 2024.

/s/ Steven H. Sadow
STEVEN H. SADOW