IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 24-cr-00251-RMR-04

UNITED STATES OF AMERICA,

     Plaintiff,

v.

4.    ADAM SHORR,

     Defendant.

---

**REPLY TO DEFENDANT SHORR'S RESPONSE TO GOVERNMENT'S MOTION FOR INQUIRY REGARDING MULTIPLE REPRESENTATION (DOC. #91)**

---

The United States submits this reply to Defendant Shorr's Response to Motion for Inquiry Regarding Multiple Representation (Doc. #91), filed September 23, 2024. The parties agree that the Court should hold a hearing to inquire of Defendants Shorr and Dougherty regarding Mr. Sadow's representation of both. The Court should make findings and determine (1) whether there is a conflict, (2) whether any conflict is waivable, and (3) if so, whether each client offers a knowing, voluntary, and intelligent waiver. In response to Defendant Shorr, the Government submits the following for the Court's consideration.

### 1.  Whether There is a Conflict

Counsel suggests that there is no concurrent representation—and therefore no existing conflict—because PACER identifies the status of Defendant Dougherty's case as "terminated," and counsel has not recently interacted with Dougherty. Respectfully, the inquiry is not so

1

narrow. First, whether the representation is concurrent or successive is a factual question on which the Court should inquire, and the facts known to date at least suggest Mr. Sadow has an ongoing representation obligation to Defendant Dougherty. Second, the status of counsel's representation is but one factor in the Court's consideration of whether there is a conflict.

      a.   <u>The status and scope of the representation.</u>

The Rules of Professional Conduct provide that counsel and the client define the scope and duration of the representation. *See* Colo. Rules Prof'l Conduct R. 1.5(b)(2). An agreement to represent a client can, and often does, include representation post-sentencing. This regularly happens with a client subject to a cooperation agreement with the possibility of a Rule 35 reduction in sentence. Defense counsel with a client in this situation actively looks for opportunities for their client to cooperate, volunteers their client for interviews with law enforcement, and seeks out evidence that may be in their client's possession to share with law enforcement, all with the goal of advocating for a Rule 35 motion.

Indeed, Mr. Sadow engaged in this process on Dougherty's behalf just months ago. *See* Doc. #91-1. Counsel e-mailed the prosecutors on Dougherty's case and stated that his client had information regarding two indicted individuals. *Id.* The indictment that Mr. Sadow references in his original e-mail to prosecutors on July 4, 2024 (at Doc. # 91-1, page 3), was unsealed just two weeks before, on June 20, 2024. *See United States v. Blair et al.*, 9:24cr80074 (S.D. Fla.), Doc. #6; *see also id.* Doc. # 3, Indictment, attached hereto as Exhibit 1.[1]  In this situation, counsel and

---

[1] This is **not an unrelated federal case**, as defense counsel states. As alleged in the indictment, Trevor and Justin Blair operated P.I.C. Group 21, LLC (PIC) and solicited and received kickbacks and bribes from Laboratory 1. *See* 9:24cr80074 (S.D. Fla.), Doc. #3, Indictment, at

client acted as if the representation was ongoing.[2] If the United States were to file a Rule 35 motion (in that matter or any other), the court would allow a defense response and would hold a hearing on the matter. Representation by Mr. Sadow for these purposes would be typical.

Courts have recognized the conflict inherent in multiple representation of a client in a Rule 35 scenario and a defendant against whom that cooperating client will testify. In *United States v. Infante*, for example, defense counsel had represented two drug co-conspirators in their own separate trials, those defendants were convicted, and then they were called to testify against a third co-conspirator in a separate trial represented by the same counsel. *United States v. Infante*, 404 F.3d 376, 391–93 (5th Cir. 2005). The circuit court concluded that although the two convicted defendants' cases were concluded, there was the possibility of a Rule 35 reduction in sentence for each based on substantial cooperation, and counsel had not unambiguously terminated the prior representations. *Id.* at 392. This was a factor in the court's finding of an

p. 5, ¶ 16; p.7, ¶ 7. Laboratory 1 is Alliance DX LLC, one of the laboratories named in this case. The evidence in this case indicates that the Tesis laboratories paid PIC approximately $2.5 million. As alleged in the Blairs' indictment, the defendants founded PIC to "circumvent a federal investigation after federal agents executed a search warrant of another company where the defendants and their co-conspirators operated a call center that solicited Medicare beneficiaries to accept medically unnecessary genetic tests that were ultimately billed to Medicare." *Id.* at p. 7, ¶ 4. The call center referenced is the Broad Street Lifestyles call center owned and operated by Defendant Dougherty and his co-defendant, Daniel Carver. Other individuals worked with both Dougherty and Carver at Broad Street and then continued to work with the Blairs at PIC. Those individuals interacted with the defendants charged and laboratories identified in this case on behalf of PIC, including Jose Goyos, who was convicted at trial in the Southern District of Florida case, 9:22-cr-80022-AMC (see Doc. # 860, Verdict) for conspiracy to commit wire fraud and conspiracy to commit money laundering.

[2] It is because of this practice of continued representation for cooperating defendants that prosecutors contact defense counsel to arrange for cooperation interviews, not the cooperating defendant directly. *See* Colo. R. Prof'l Conduct R 4.2. And that is the reason the investigative team in this case has not yet interviewed Dougherty.

actual conflict. *Id. See also, e.g.*, *United States v. Cortez*, 205 F. Supp. 3d 768, 778 (E.D. Va. 2016) (concluding counsel had an ongoing duty to a cooperating, convicted client because he should "attempt to persuade the prosecution to call [the cooperator] against defendant, so that [he] may receive a reduced sentence," but as counsel for the defendant on trial, he "should seek to exclude, diminish, or discredit [the cooperator's] testimony"); *United States v. Williams*, 439 Fed. App'x 254, 256 (4th Cir. 2011) (affirming district court's finding of a conflict where government had identified a potential witness whom defense counsel had represented and who had the potential to earn a Rule 35 reduction in his sentence).

To determine whether counsel currently represents Dougherty, the Court should ask the client what his understanding of the scope and duration of the representation is and what his expectations are with respect to representation in his cooperation, testimony, and any potential Rule 35 briefing and hearings. The Court may also examine counsel's engagement letter and retainer/fee agreement with Dougherty or inquire of counsel and his client regarding the terms thereof. Reaching a conclusion on this question is an important factor not only in determining whether there is a conflict or potential conflict, but also in fully advising the defendants regarding the consequences of a waiver, should the Court find a waivable conflict.

b.  The multi-factored conflict analysis.

As the Fifth Circuit noted in *Infante*, the status of the representation is but one question in the conflicts analysis, which "depends on a number of factors," including:

> [W]hether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated.

4

*Infante*, 404 F.3d at 392. In *Infante*, neither client testified directly about any interactions with Infante, and defense counsel denied having learned any relevant confidential information from his former clients about Infante. Nevertheless, considering the factors noted, the Fifth Circuit concluded an actual conflict of interest existed because the previous clients had pleaded guilty to crimes that were part of the same conspiracy as alleged against Infante, the convicted defendants' testimony consisted primarily of recounting the crime with which they were charged in the cases in which defense counsel represented them, the prior representations and the present client's case were close in time, and defense counsel did not unambiguously terminate the prior representations. *Id.* at 391–93.

Mr. Sadow asserts that he has not communicated with Defendant Dougherty about Defendant Shorr and says that, via an e-mail conversation with his incarcerated client, Dougherty stated he did not speak with Shorr. Once again, the inquiry is not so limited. Rather than direct testimony about a specific person, it is the substantial overlap of facts that creates the conflict, as in *Infante*. Thus, defense counsel's focus on whether he heard or knows anything about Defendant Shorr is too narrow. Defendant Dougherty's testimony in this case will consist of recounting the facts of his own conviction (with which defense counsel is intimately familiar and agreed to in the signed stipulation of facts, *see* Doc. # 78-4) as a relevant part of the conspiracy with which defendants are charged.  Mr. Sadow necessarily possesses client confidences regarding Dougherty's conspiracy and conviction, which are subsumed in the conspiracy charges in this case and implicate anticipated witnesses beyond just Dougherty, including at least Daniel Carver and potentially other individuals who worked at the Broad Street call center. Such

witnesses could also include those co-conspirators and associates who transitioned to work with the Blairs at PIC (see *supra* note 2 and further discussion below). This creates the further potential to limit or affect Mr. Sadow's representation of Defendant Shorr.

Finally, defense counsel suggests that the conflict is only potential because the United States has not yet interviewed Dougherty. As the Government stated in its motion, it anticipates calling Dougherty as a trial witness. No witness is ever set in stone, and it is the rare attorney—prosecutor or defense—that will *guarantee* a future course of conduct. What the United States knows, however, is that: (1) Defendant Dougherty is a co-conspirator whose crime is subsumed within the charges in this case, (2) he personally received a portion of the illegal kickbacks and bribes paid to Sunrise Consulting LLC (the company that Todd Shull[3] used to contract with the Tesis laboratories but that used the Broad Street call center), (3) he seeks to cooperate, (4) he dealt directly with Daniel Carver and Todd Shull, both of whom interacted directly with Defendant Shorr and are co-conspirators in both cases, and (5) he spoke about Defendant Shorr with others[4] (even if at this moment he does not believe he spoke to Defendant Shorr directly). The Government would expect an interview of Dougherty to be consistent with this evidence and the facts to which he stipulated in his plea. On this basis, the Government anticipates calling

---

[3] Todd Shull was charged and pleaded guilty in the Southern District of Florida regarding his role in taking kickbacks from Claro through Sunrise. *See* Exhibit 2, S.D. Fla. Case No. 9:22-cr-80103-DMM, Factual Basis for Guilty Plea, Doc. #12. In the factual basis, he admits paying a portion of the funds to MC Mission, Dougherty's company. *Id.* Shull cooperated and received a Rule 35 reduction in sentence. *See id.*, Doc. #45.

[4] See, e.g., Exhibit 3, an excerpt of text messages provided by Todd Shull between himself and Dougherty, discussing "Adam" (Shorr) with Dougherty and payment from Claro to Broad Street.

Dougherty. If this results only in a "potential" conflict, that is still sufficient to create constitutional concern that the Court must guard against. *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 163 (1988); *Williams*, 439 Fed. App'x at 256.

The Court should also consider, and defendants should be advised, that whether or not Defendant Dougherty testifies, a conflict may still arise give the factual overlap of the two cases. Overlapping witnesses between the two cases will testify, including convicted cooperating Defendant Daniel Carver. Carver dealt directly and frequently with Defendant Shorr, and he was Defendant Dougherty's business partner, charged and convicted in the same conspiracy (*see* Doc. 78-1, S.D. Fla. Indictment),[5] subsumed within this case. In cross-examining Carver, Mr. Sadow also will be restrained from using any confidential information he obtained from Defendant Dougherty about their conspiracy, as well as any potential confidences learned from Defendant Carver himself, if there were a joint defense agreement in the case. [6] Mr. Sadow's cross-examination of Defendant Carver will also risk negatively affecting Defendant Dougherty's interests, should counsel undermine or attempt to undermine any portion of Carver's testimony that is consistent with or corroborates Defendant Dougherty's. The same

---

[5] Defendant Carver testified in the case in which he was originally charged and then pleaded guilty. His available testimony is attached as Exhibit 4. He explained that he owned Broad Street with Dougherty, they obtained fraudulent doctors' orders for genetic testing and sold them to Claro and Tesis (spelled "Theses" in the transcript). *See* Exhibit 4 at, e.g., Transcript p. 40 (Exhibit p. 4) (explaining he partnered with Dougherty in running the call center for Broad Street and related entities); p. 45 (Exhibit p. 9) (stating they sold fraudulent genetic testing order to Claro and "Theses"); pp. 56–57 (Exhibit pp. 20-21) (explaining the call center was shut down after the federal government raided it) (referenced in the Blairs indictment, *see supra* note 2).

[6] The United States has no information as to whether there was a joint defense agreement, but the Court should inquire as to this matter at the proposed hearing.

concern is present for any witness who was a participant in the Broad Street/Sunrise and PIC conspiracies and may end up testifying in this case: any engagement with those witnesses on cross-examination risks undermining counsel's client, Dougherty, and certainly affects counsel's representation of Shorr.

### 2. Whether the Conflict is Waivable

As the defense points out, in determining whether a serious potential for conflict is waivable, the Court may consider whether measures alternative to disqualification can protect the defendant. *United States v. Turner*, 594 F.3d 946, 952 (7th Cir. 2010). Counsel proposes that Defendant Dougherty will be represented by separate counsel for purposes of his cooperation, this separate counsel will not confer with Mr. Sadow regarding the cooperation or Dougherty's testimony, and that independent counsel will be available to cross-examine Dougherty at Shorr's trial if necessary.

With respect to the proposal for Defendant Dougherty, the Court should confirm at the proposed hearing that Dougherty is on board with this procedure, that he does not believe Mr. Sadow is obligated to continue his representation, that he does not ask him to, and that he has the means to obtain new counsel (or is indigent and seeks appointment of counsel). Counsel asserts this procedure will not negatively affect Dougherty because the "only open question" is whether the DOJ prosecutors in Florida will file a motion under Rule 35 to reduce his sentence in exchange for substantial cooperation. As discussed above, it is not the only question regarding Defendant Dougherty's representation. There are questions not only regarding Rule 35 and cooperation representation, but also protection of Defendant Dougherty's confidences throughout

8

the litigation of this case for a set of substantially overlapping facts. If counsel continued to represent Defendant Dougherty, he would advise him on cooperation, assist in providing that cooperation, advise him regarding testimony in this case, and handle the Rule 35 briefing and proceedings. If he does not, Defendant Dougherty should fully understand that; he should determine whether he wishes to accept alternative counsel, and he should understand the risk of exposure of his client confidences if Mr. Sadow continues his representation of Shorr (with Defendant Dougherty's permission and waiver).

With respect to the proposal for protecting Defendant Shorr's trial right to cross-examination of witnesses, the Court should fully advise Shorr regarding his rights and the risks inherent in counsel's proposal that independent counsel cross-examine Dougherty. If independent counsel comes in for this limited purpose, she will necessarily have less background on the overall case and will be unable to confer with Mr. Sadow. This could limit the effectiveness of the cross-examination. The Government submits that if the Court deems such cross-examination procedures necessary and appropriate to avoid disqualification, the procedure is also necessary for the examination of Defendant Carver and any other witnesses connected to the Broad Street/Sunrise conspiracies to ensure that cross-examination of Dougherty's co-conspirators and associates is not in conflict with Dougherty's interests, and that duty to Dougherty does not undermine Shorr's right to effective examination of these witnesses. Installing substitute counsel for this purpose, however, carries the same risks as having separate counsel cross-examine Dougherty.

Finally, counsel argues that Defendant Shorr's right to choice of counsel must be

paramount. To be sure, counsel are not fungible, and selection of counsel of one's choice is important. But "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, courts "must have sufficiently broad discretion to rule without fear that it is setting itself up for reversal on appeal either on right-to-counsel groups if it disqualifies the defendant's chosen lawyer, or on ineffective-assistance grounds if it permits conflict-infected representation of the defendant." *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996).

### 3.  The Waiver Inquiry

If the Court finds an actual or potential conflict that may be waived, both defendants must provide knowing, voluntary, and intelligent waivers. Defendant Dougherty's waiver is a necessary prerequisite to counsel's continuing his representation in this case under either Colorado Rule of Professional Conduct 1.7 or 1.9. Defendant Shorr's waiver is necessary under Rule 1.7, but in any case, must be obtained to ensure protection of his constitutional rights and to avoid any potential future motion to substitute counsel, appellate issues, or motion for post-conviction relief. Critical to a knowing waiver is full disclosure of the risks inherent in relying upon conflicted or potentially conflicted counsel, which includes consideration of the facts at play in this case, as well as each defendant's clear understanding of their rights. To facilitate the hearing and in anticipation of the Court's questioning of both defendants on this point, the Court should appoint CJA panel counsel to advise each defendant on their rights and risks of waiver.

10

Respectfully submitted this 27th day of September, 2024.

MATTHEW T. KIRSCH
Acting United States Attorney

By:    */s/ Anna Edgar*
Anna Edgar
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
E-mail: anna.edgar@usdoj.gov
Attorney for the United States

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

_/s/ Amy McDaniel_
Legal Assistant
U.S. Attorney's Office